IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 10-40275 |
| | ) | |
| ROBERT A. SEARS, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

**MOTION FOR RELIEF FROM AUTOMATIC STAY
UNDER 11 U.S.C. § 362**

Rhett R. Sears, the Rhett R. Sears Revocable Trust, Ronald H. Sears, the Ron Sears Trust, and Dane R. Sears, creditors of Debtor, (collectively, the "Sears Creditors") for their Motion for Relief from Automatic Stay, respectfully represent:

1. Robert A. Sears, the above-named Debtor, filed his voluntary petition under Chapter 11 of the United States Bankruptcy Code on February 2, 2010 (the "Petition Date").

2. The Court has jurisdiction over this Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this title 11 case and this Motion is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is 11 U.S.C. § 362.

3. The following promissory notes were executed and delivered by Korley B. Sears to the Sears Creditors (collectively, the "Notes"):

| **Date** | **Payee and Holder of Note** | **Original Principal** |
|---|---|---|
| 6/22/07 | Rhett R. Sears and the Rhett R. Sears Revocable Trust | $2,480,745.48 |
| 6/22/07 | Ron H. Sears Trust | $2,895,768.90 |
| 6/22/07 | Dane R. Sears | $242,109.00 |

525684.1

True and correct copies of the Notes are attached to the proofs of claim filed herein by the Sears Creditors (*see* Claims Nos. 2, 3, and 4 herein: collectively, the "Proofs of Claims").

    4.      On or about June 22, 2007, Debtor executed and delivered to the Sears Creditors his Pledge and Security Agreement (the "Pledge Agreement") for the purpose of securing all obligations under the Notes and pledging the following described property "whether held directly or indirectly by the Debtor" (collectively, the "Collateral"):

    a.    222 shares of AFY, Inc. purchased by Korley B. Sears from Rhett R. Sears and represented by certificate no. 78

    b.    222 shares of AFY, Inc. purchased by Korley B. Sears from Ronald H. Sears and represented by certificate no. 79

    c.    20 shares of AFY, Inc. purchased by Korley B. Sears from Dane R. Sears and represented by certificate no. 80

    d.    10 shares of AFY, Inc. purchased by Korley B. Sears from Kelli K. Sears and represented by certificate no. 81

    e.    323.25 shares of Sears Cattle Co. owned by Robert A. Sears and represented by certificate nos. 8 and 9

    f.    646.5 shares of Sears Cattle Co. owned by Korley B. Sears and represented by certificate nos. 13 and 14

    g.    All of the ownership interest of AFY, Inc. in and to Ainsworth Cattle Feeding, LLC

    h.    All of the ownership interest of Ron Sears Cattle, Inc. n/k/a Korley B. Sears Cattle, Inc. in and to Ainsworth Cattle Feeding, LLC

    i.    All of the ownership interest of Rhett Sears Cattle, Inc. in and to Ainsworth Cattle Feeding, LLC

    j.    All of the ownership interest of Bob Sears Cattle, Inc. n/k/a Robert A. Sears Cattle, Inc. in and to Ainsworth Cattle Feeding, LLC

    k.    All of the ownership interest of DK Sears Cattle, Inc. in and to Ainsworth Cattle Feeding, LLC

      l.      All of the ownership interest of AFY, Inc. in and to Ainsworth Feed Yards, LLC

      m.      All of the ownership interest of Bob & Ron, Inc. in and to Ainsworth Feed Yards, LLC

      n.      All of the ownership interest of Bob & Rhett, Inc. in and to Ainsworth Feed Yards, LLC

      o.      All of the ownership interest of Bob & Dane, Inc. n/k/a Bob Sears Feeding, Inc. in and to Ainsworth Feed Yards, LLC

      p.      All of the ownership interest of Ron & Rhett, Inc. n/k/a Korley Sears Feeding, Inc. in and to Ainsworth Feed Yards, LLC

      q.      All of the ownership interest of Rhett & DK Sears, Inc. in and to Ainsworth Feed Yards, LLC

      r.      All of the ownership interest of Ron & Korley, Inc. n/k/a BK Sears Feeding, Inc. in and to Ainsworth Feed Yards, LLC

A true and correct copy of the Pledge Agreement is attached to each of the Proofs of Claims. The ownership interests identified above in AFY, Inc. pledged to the Sears Creditors represent approximately two-thirds of the ownership interests and voting rights in AFY, Inc.

     5.     AFY, Inc. is now a Chapter 11 debtor in this Court by reason of its Voluntary Petition filed on March 25, 2010 at Case No. 10-40875. The voluntary petition, schedules, and other Court filings for AFY, Inc. were signed by Robert A. Sears as its President.

     6.     UCC Financing Statements perfecting the security interests granted to the Sears Creditors by the Pledge Agreement were filed with the Nebraska Secretary of State on August 7, 2007. Stock certificates for the Collateral were delivered to Commercial National Bank as Escrow Agent under paragraph 2 of the Pledge

Agreement, and stock powers were executed and delivered to the Sears Creditors. Copies of all such documents are attached to the Proofs of Claims.

7.  As of the Petition Date, each of the Notes was past due and owing and in default by reason of failures to make payments due under each of the Notes in June or July of 2009, and all such defaults continue to the present time. The amount owing on the Petition Date under each of the Notes, which amounts include interest calculated at the rate of 8.25% per annum, are:

| Holder of Note | Principal Due | Interest | Total |
|---|---|---|---|
| Rhett R. Sears and the Rhett R. Sears Revocable Trust | $2,232,670.94 | $474,814.69 | $2,707,485.63 |
| Ron H. Sears Trust | $2,459,335.13 | $333,649.80 | $2,792,984.93 |
| Dane R. Sears | $205,619.71 | $27,895.74 | $233,515.45 |
| TOTALS | $4,897,625.78 | $836,360.23 | $5,733,986.01 |

8.  Debtor has no equity in the Collateral, and the Collateral is not necessary for an effective reorganization. The Collateral, for example, is described on Debtor's schedules as "worthless companies."

9.  Further, the interests of the Sears Creditors in the Collateral are not adequately protected. For example:

   a.  When the interests of the Sears Creditors in the Collateral were sold to Debtor in 2007, such Collateral was far from worthless and had, according to the combined principal amounts of the Notes, a value for the interests of the Sears Creditors in excess of $5,600,000;

   b.  The "Summary of Schedules" filed by AFY, Inc. in its bankruptcy proceeding (Filing No. 4 in Case No. 10-40875) indicates that the total value of its assets ($19,136,924) exceeds the amount of its debts ($17,478,823) by $1,658,101, and the said total debt amount

    includes claims totaling $5,829,214 that are scheduled by AFY, Inc. as "Disputed";

c.   Debtor has not explained satisfactorily any loss of Collateral value since June of 2007;

d.   Debtor has been in the process of liquidating various Collateral assets, and such liquidation efforts appear to have a potential for creating value for the interests of the Sears Creditors (*see, e.g.,* schedules and other Bankruptcy Court filings in the AFY, Inc. proceedings (Case No. 10-40875));

e.   Debtor, as Director and President of AFY, Inc., is refusing to close on recent auction sales of AFY, Inc. assets, is refusing to liquidate promptly all other assets of the Collateral, and appears to be attempting to retain substantial value from Collateral assets for his own benefit;

f.   Debtor, along with his son Korley B. Sears, exercised purported voting rights to file, for AFY, Inc., a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code for the purpose of refusing to close the recent auction sale agreements of AFY, Inc.;

g.   Said auction sale agreements purchase agreements were for a total price in excess of $10.2 million and were entered into as the result of a well-publicized auction conducted by well-qualified and experienced auctioneers;

h.   Said auction sale agreements create an opportunity for the Sears Creditors to obtain substantial value from the Collateral;

i.   AFY, Inc.'s refusal to close and/or rejection of such auction sale agreements will create numerous and substantial claims by

          purchasers and others against the Collateral entities, and particularly AFY, Inc., thereby dissipating and impairing the Sears Creditors' interests in the Collateral; and

    j.    The refusal by Debtor and Korley B. Sears, as officers and directors of AFY, Inc., to close the auction sale agreements is an unauthorized act under paragraph 3(a) of the Pledge Agreement (which would have been an unauthorized act even without an Event of Default) that provides:

> So long as no Event of Default . . . shall have occurred and be continuing: (i) Grantor shall be entitled to exercise any and all voting and other consensual rights pertaining to the Collateral . . . ; provided, however, that the Grantors shall not exercise or refrain from exercising any such right if such action would have a material adverse effect on the value of the Collateral.

10.    The Pledge Agreement, in paragraph 3(c), empowers the Sears Creditors, in the event of a default under the Notes and Pledge Agreement, as follows:

> If an Event of Default shall have occurred and be continuing, all rights of Grantors [Robert A. Sears and Korley B. Sears] to exercise the voting and other consensual rights which they would otherwise be entitled to exercise pursuant to Section 2(a)(i) [sic] shall immediately cease, and all such rights shall thereupon become immediately vested in Secured Parties, so long as the Event of Default continues, and Secured Parties shall thereupon have the sole right to exercise such voting and other consensual rights. [Brackets added.]

11.    Under paragraph 3(c) of the Pledge Agreement, an Event of Default occurred when Korley Sears failed to make the payments due under the Notes in June and July of 2009, which defaults continue to the present time.

12.    Under paragraph 3(c) of the Pledge Agreement, the voting rights to the 464 shares of AFY, Inc. that the Sears Creditors transferred to Korley Sears became

immediately vested in the Sears Creditors upon the occurrence of the Events of Default in June and July of 2009.

13. A person to whom a borrower pledges his stock in a closely-held corporation becomes entitled to vote borrower's shares automatically upon his default, without need for the transfer of the record ownership of shares, where pledge agreement that borrower executed in connection with his pledge of stock explicitly provided that borrower's voting rights would automatically cease upon his default. *In re Tominaga* (*Tominaga v. Sherwood Investments Ltd.*), 325 B.R. 653, 659 (Bankr. M.D. Fla. 2005). *See also In re Eastern Bancorporation*, 23 B.R. 474 (Bankr. E.D. Penn. 1982) (holding that pledge agreement allowed bank, upon default of corporation's affiliates on loans, to exercise all voting and corporate rights of affiliates).

14. Therefore, the voting rights to the 464 shares of AFY, Inc. were properly vested in the Sears Creditors as of the Petition Date.

15. The Sears Creditors, and each of them, request relief from the automatic stay so that they may pursue any or all their remedies under the Pledge Agreement as to all the Collateral or any portion thereof, including but not limited to:

    a. exercising all voting and other rights as holders of the Collateral, including action to terminate the current officers and directors of AFY, Inc. and to appoint one or more new officers and directors to take control as debtor in possession of AFY, Inc. so that all pertinent action may be taken to close the auction sale agreements entered into by AFY, Inc. and to continue liquidating assets of AFY, Inc.;

  b. exercising and enforcing any or all rights and remedies available upon default to a secured party under the Uniform Commercial Code; and

  c. exercising or enforcing any or all other rights available to secured parties by law or agreement against the Collateral.

 16. Because the auction sale agreements described above involve the sale of farm land and cattle feedlot land and facilities, each auction sale agreement needs to close very quickly so that crops can be planted for the 2010 crop season and so that preparations for post-closing use of the feedlot land and facilities can be effectuated.

 17. Because of the exigencies of the pending sales in light of the upcoming 2010 farming season and the preparations made by purchasers for immediate use of the purchased property after the March 31, 2010, scheduled closings, the 14-day waiting period set forth in FRBP 4001(a)(3) should not apply.

 18. The evidence to be presented by the Sears Creditors in support of this Motion will consist of the following:

  a. The Proofs of Claims;

  b. Admissions and information contained in petition, schedules, statement of financial affairs and other court filings by Debtor in the above-captioned proceeding, by Korley B. Sears in his Chapter 11 proceedings (Case No. 10-40277), and by purported representatives of Debtor in the AFY, Inc. Chapter 11 proceedings (Case No. 10-40875); and

  c. Affidavits or declarations of one or more of the Sears Creditors and others regarding matters addressed in this Motion.

WHEREFORE, the Sears Creditors pray for an order vacating and terminating the automatic stay of 11 U.S.C. § 362 so that the Sears Creditors can proceed to exercise all rights and remedies available to them by reason of the defaults under the

Pledge Agreement and the Notes, including but not limited to all the rights and remedies identified above and also waiving the 14-day waiting period of FRBP 4001(a)(3).

DATED this 30th day of March, 2010.

> RHETT R. SEARS, THE RHETT SEARS REVOCABLE TRUST, RONALD H. SEARS, THE RON SEARS TRUST, and DANE R. SEARS, Creditors
>
> By:  /s/ Donald L. Swanson
> Donald L. Swanson #16385
> Brian J. Koenig #23807
> KOLEY JESSEN P.C., LLO
> 1125 South 103rd Street, Suite 800
> Omaha, NE 68124
> (402) 390-9500
> (402) 390-9005 (fax)
> Don.Swanson@koleyjessen.com
> Brian.Koenig@koleyjessen.com
>
> Attorneys for the Sears Creditors

## CERTIFICATE OF SERVICE

On this 30th day of March, 2010, I electronically filed the foregoing Motion for Relief from Automatic Stay with the Clerk of the Bankruptcy Court using the CM/ECF system which sent notification of such filing to all CM/ECF participants.

/s/ Donald L. Swanson