## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEBRASKA

In Re:

Robert A. Sears,                          Case No.   BK 10-40275

                    Debtor.


In Re:                                    Case No.   BK 10-40277

Koley B. Sears,

                    Debtor.


                                          Chapter 11


## OBJECTION AND RESISTANCE TO MOTION FOR APPROVAL OF

## VOTING PROCESS


Robert A. Sears, Debtor and Debtor in Possession in Case No. 10-40275, ("Robert") and Korley B. Sears, Debtor and Debtor in Possession in Case No. 10-40277, ("Korley") object to and resist the Motion For Approval of Corporate Voting Process, Subject to Condition Precedent ("Voting Motion") filed by Rhett R. Sears ("Rhett"), the Rhett R. Sears Revocable Trust ("Rhett Trust"), Ronald H. Sears ("Ronald"), the Ron H. Sears Trust ("Ron Trust"), and Dane R. Sears ("Dane") (collectively "Moving Sears"), admitting, denying, and alleging as follows:

## I.

## ("Moving Sears Allegations")

1. Admit the allegations in Paragraph 1 of the Voting Motion that the Moving Sears have filed "Relief Motions" in Case No. 10-40275 of Robert A. Sears, and Case No. 10-40277 of Korley B. Sears and Deny all other allegations in Paragraph 1.

2. Admit all allegations of the Voting Motion in Paragraph 2.

3. Admit the allegations of the Voting Motion in Paragraph 3 that Robert and Korley took action as directors to authorize the Chapter 11 filing by AFY, Inc. ("AFY") and that Robert as President signed the Voluntary Petition that commenced the Chapter 11 case for AFY; deny all other allegations in Paragraph 3; allege that Robert and Korley were duly elected members of AFY's Board of Directors before any default under the Pledge and Security Agreement; the By-Laws of AFY provide that members of AFY's Board of Directors and AFY's Officers continue to serve until successors are duly elected or chosen and qualified; and no successors have been elected or chosen and qualified.

4. Admit the allegations in Paragraph 5 of the Voting Motion that Robert and Korley signed the Pledge and Security Agreement; deny all other allegations in Paragraph 5; and allege that neither Robert nor AFY signed any promissory note.

5. Admit any allegations in Paragraph 6 of the Voting Motion that since June or July of 2009, no payments that were due have been made to any of the Moving Sears; deny all other allegations in Paragraph 6.

6. Admit that the language in the Pledge and Security Agreement includes the language quoted in Paragraph 8 of the Voting Motion; deny all other allegations in Paragraph 8.

7. Admit the allegations in Paragraph 9 of the Voting Motion that in the event of relief from the automatic stay on the Motions for Relief, the Voting Motion shall be null and void; deny all other allegations in Paragraph 9.

8. Admit the allegations Paragraph 10 of the Voting Motion that Exhibit B is attached; allege that all other allegations in Paragraph 10 are of such a nature Robert and Korley are not required to admit or deny them; further allege that if required to admit or deny, such other allegations are denied.

3

9. Allege that all allegations in Paragraph 10 of the Voting Motion are of such a nature that Robert and Korley are not required to admit or deny them; further allege that if required to admit or deny, such allegations are denied.

10. Allege that all allegations in Paragraph 11 of the Voting Motion are of such a nature that Robert and Korley are not required to admit or deny them; further allege that if required to admit or deny, such allegations are denied.

11. Deny the allegations in Paragraph 12 of the Voting Motion.

12. Allege that all allegations in Paragraph 13 of the Voting Motion are of such a nature that Robert and Korley are not required to admit or deny them; further allege that if required to admit or deny, such allegations are denied.

13. Admit that any allegations in Paragraph 14 of the Voting Motion that Rhett, the Rhett Trust, Ronald, the Ron Trust, Dane, Robert, and Korley are represented by legal counsel in this Chapter 11 case; deny all other allegations in Paragraph 14.

4

14.  Admit the allegations in Paragraph 15 of the Voting Motion.

15. Allege that the Johns-Manville case cited in Paragraph 16 of the Voting

Motion speaks for itself and deny all other allegations in Paragraph 16.

16.  Admit the allegations in Paragraph 17 of the Voting Motion that the

Moving Sears filed a Motion for Expedited Process regarding the Voting

Motion but deny all other allegations in Paragraph 17.

## II.

### (Voting Separated From Ownership)

17.  The Moving Sears are not stockholders of AFY.  The default in

payment by Robert and Korley leaves the ownership of the shares

unchanged.  For ownership to be changed, the Moving Sears must

exercise rights under Article 9 of the U.C.C. and Paragraph 6 of the Pledge

and Security Agreement and foreclose on shares.

18.  The separation of ownership of the shares of AFY from the power to

vote them in the Pledge and Security Agreement does not provide the

Moving Sears with the right to vote as owners of the shares.  It provides in

relevant part that in the event of a default, the Moving Sears as "Secured

Parties" may:

> "(i) exercise all voting and other rights <u>as a</u>
>
> <u>holder of Collateral</u>." (emphasis added)

This language does not give Secured Parties any voting rights unless

outside the quoted language a Secured Party has the right to vote. It

does not mean that as Secured Parties the Moving Sears have any

rights until after a foreclosure sale under the U.C.C. at which the

Moving Sears buy the shares. It is provided that the Moving Sears

may:

> "(ii) exercise and enforce any and all rights
>
> and remedies available on default to a
>
> Secured Party under the U.C.C...."

As permitted by Neb. Rev. Stat. § 21-2060 (4) (Cum.

Supp 2009), Robert and Korley hereby revoke any and

all proxies they have given to any of the Moving Sears.

19. Under the By-Laws of AFY:

A. The annual meetings of the stockholders are to be held on January 2nd each year;

B. Special meetings of Stockholders may be called by the Board of Directors and by the President and shall be called upon by written requests of <u>stockholders of record</u> holding one fifth or more of outstanding shares of the stock (emphasis added);

C. The Moving Sears are not stockholders of record; Robert and Korley are the stockholders of record;

D. Special meetings of stockholders can only be held on at least three but not more than ten days notice;

E. Only stockholders of record are entitled to vote.

20. Nowhere does the Pledge and Security Agreement give the Moving Sears any irrevocable right to act as stockholders of record, make motions, initiate actions, etc.

21.  The rights of the Moving Sears to vote do not include the right to call meetings of stockholders, the right to nominate members of the Board of Directors, or the right to select officers of AFY.

22.  Under the Pledge and Security Agreement, Nebraska Law governs and controls the meaning.

## III.

### (Clear Abuse)

23. Any right of stockholders of record or of the Moving Sears to hold a stockholders meeting for a Corporation in Chapter 11 is not an absolute right.  In In re Public Service Holding Corporation, 141 F2d 425 (2d Cir 1944), the Court stated the long standing Rule:

> "It is of course true…that the mere pendency of a petition for reorganization under the Bankruptcy Act does not deprive stockholders of the debtor of their right to hold an annual meeting…But that right is not absolute.   When other considerations require suspension of it they are to be

> given effect and the instance here
> presented is one showing the exercise of
> sound discretion…" (emphasis added)

In In re Potter Instrument Co. Inc., 593 F2d 470 (2d Cir. 1979), the court affirmed the order of the bankruptcy court refusing to direct a stockholder's meeting to elect new directors, holding the standard for an order blocking a shareholder meeting is "clear abuse":

> The right of the majority of stockholders to
> be represented by directors of their own
> choice and thus to control corporate policy
> is paramount and will not be disturbed
> unless a case of clear abuse is made out.
> This has been the rule all along in
> receivership, ordinary bankruptcy, and in
> proceedings for reorganization….
> (emphasis added)

593 F2d at 475

9

24.  When deciding whether a meeting of stockholders should be denied for clear abuse, the Court should do so after an evidentiary hearing with live witnesses.  It was so held in re Johns-Manville Corporation, 801 F2d 60, (2nd Cir. 1986).   See also after remand, In re Johns-Manville Corporation et al, 66 BR 517, 518 (Bankr. S.D. NY 1986) ("the Second Circuit reversed and remanded the summary judgment decision directing this court to hold an evidentiary hearing to undertake more elaborate inquiry into clear abuse and irreparable harm."

25. Clear abuse exists when an election of new directors might result in unsatisfactory management, In re Potter, supra:

> "…the bankruptcy court and the district court were justified in denying appellant's petition for a special meeting to elect new directors in view of the finding that such an election might result in unsatisfactory management and would probably jeopardize both PICO's rehabilitation and the rights of creditors and stockholders sounding the 'death knell' to the debtor as well as to appellant himself" (emphasis added)

593 F2d at 475

26.  Rhett has not ever managed the Feed Lot and were he to become the only director and officer, there is substantial risk that the result would be unsatisfactory management.

27. As stated in the above quote from In re Potter, supra, clear abuse also exists if such election would jeopardize AFY's rehabilitation, sounding the death knell to AFY.  In the Johns-Manville case, 801 F2d 60 (2d Cir 1986), referred to by the Moving Sears in their papers, it was held that the right of an Equity Committee to call a shareholders meeting:

> "May be impaired only if the Equity Committee is guilty of clear abuse in attempting to call one…the bankruptcy court found that any shareholder meeting…has the potential to derail the entire Manville reorganization with devastating consequences or at least to delay or halt plan negotiations…"

801 F2d at 64

It was also suggested in a footnote in Johns-Manville that:

> "...if Manville were determined to be
> insolvent, so that the shareholders lacked
> equity in the corporation, denial of the right
> to call a meeting would likely be proper,
> because the shareholders would no longer
> be the real parties in interest..."

801 F2d 65, n. 6

For a treatise discussion of the clear abuse rule, see 5 Norton L & Prac. 3d § 96.7.

28.  The purpose of the Voting Motion is to undermine and sound the death knell to AFY.  Not only does the Voting Motion say so in so many words, but:

A.  The Feed Yard and the associated irrigated farm land was purchased by Rolling Stone Land and Cattle owned by Bob Maxwell.  After the sale, Maxwell said in the presence of

12

witnesses in substance that "as soon as I turn on the lights to the Feed Yard, I will have made $4 million";

B.  There is no legitimate reason for assuming and closing the executory contract with Rolling Stone Land and Cattle for Tract #1 or the executory contracts for Tracts #2-11.   The logical inferences for Rhett seeking to do so are either that Rhett has great animosity toward Robert and Korley, and that he is willing to deprive AFY of substantial value or that Rhett has an understanding with Maxwell, the owner of Rolling Stone Land and Cattle, under which Rhett will share in any windfall resulting from any sale of Tract #1 or a combination;

C.  Tract #1, which is the Feed Yard and over 10 quarters of associated farm ground with manure easements, sold for $6 million.   This is $4 million less than $10.3 million (211.55 X 49,000) the value that Farm Credit had appraised the Feed Yard without the farm ground and without the easements as of March 10, 2009;

D. Entirely missing from the Voting Motion and the supporting documents of the Moving Sears is any analysis of whether the

executory purchase contracts that Rhett would have the
Estate assume are valuable because they provide for sales
near the value of the land;

E.  The Auction Sale on February 9, 2010 was not adequately
advertised; Farm Credit had placed a marketing time on the
Feed Yard of 12 to 18 months; the auction was advertised for
6 weeks or less;

F.  Also entirely missing from the Voting Motion and the
supporting documents of the Moving Sears is any analysis of
the income and property tax liabilities for such things as
capital gains and accelerated depreciation that will result if the
sales are closed.  Those income tax liabilities are estimated at
over $1 million (with additional tax resulting if the anticipated
sale of approximately $1.5 million in equipment is closed).  In
addition there are property taxes of approximately $194,000
claimed.  These liabilities dwarf any liability to the auctioneers;

G.   The Ochsner Partnership is available to lease all irrigated
farm land of AFY for cash rent of $450,000 if the court permits;

H.    In other words, assuming the Executory Contracts resulting from the February 9, 2010 Auction are assumed, it is virtually certain to result in no payment to unsecured creditors because of:

i.  The tax liabilities generated;

ii. And the unreasonably low sales prices at the February 9, 2010 auction;

I.  Rhett is hostile and acrimonious toward Robert and Korley and appears to be motivated by a desire to see AFY fail;

J.   Rhett has borne a grudge since their father, Redmond Sears had named Robert to manage the Feed Yard instead of Rhett, who is the oldest.   Fuel was added when Redmond died and left Redmond's shares to Korley in Trust and left none to others.

## IV.

### (Equitable Defenses)

29.  The Moving Sears are barred from now asserting voting rights in AFY by waiver, laches, estopple, lack of clean hands, and the doctrine that one must do equity to get equity.  They delayed an unreasonable time to assert their voting rights after knowing of a default.  During the period of delay, Robert and Korley materially changed their position by entering into agreements with secured creditors of AFY, and continuing to work full time in order to liquidate assets in such a way as to maximize the return to both secured and unsecured creditors of AFY.  Korley even mortgaged his house to Farm Credit.

30.  The Moving Sears materially breached their implied obligations to Robert and Korley to perform and enforce their obligations to Robert and Korley in the Pledge and Security Agreement in good faith and with fair dealing.  As the result of such material breaches, Robert and Korley are excused and discharged from their obligations under the Pledge and Security Agreements.

## V.

### (Not Estate's Best Interest)

31.  It is not in the best interest of AFY's estate to assume the Executory Contracts resulting from the February 9, 2010 auction.

16

32. The February 9, 2010 auction was a failure. The high bids for the eleven tracts, with minor exceptions, were substantially less than the actual value.

33. In particular, the high bid for Tract #1, which consists of AFY's Feed Yard and approximately 1,200 acres of irrigated farm ground, is approximately $4 million below the appraised value.

34. Assumption of the Executory Contract for the eleven tracts as a group, and the executory contract for Tract #1 in particular, would be a violation of the business judgment standard applicable to assumption or rejection of executory contracts requiring good faith reasonable business judgments. Indus. 204 F3d 1276 (9th Cir. 2000). It would also breach the duties of good faith and due care under Nebraska Corporate law. Neb. Rev. Stat. § 21-2099 (Reissue 2007)

## VI.

## (Proof to Be Offered)

35. The evidence of Robert and Korley is expected to possibly include affidavits of Robert, Korley, the schedules filed by AFY, and any proof

17

offered by the Moving Sears.   The affidavits will identify the Articles of Incorporation and By-Laws for AFY, the values of the 11 Tracts, a statement by Maxwell, and an estimate of tax liability.

WHEREFORE, Robert and Korley, Debtors and Debtors in Possession, pray that the Court deny the Motion for Approval of Voting Process filed by the Moving Sears and grant Robert and Korley such other relief as is just and equitable.

Dated:  April 6, 2010

Robert A. Sears,
Debtor In Possession

and

Korley B. Sears,
Debtor In Possession

By: Jerrold L. Strasheim (#14070)
3610 Dodge Street, Ste. 212
Omaha, NE 68131
(402) 346-9330
Their attorney

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 6, 2010 the attached Objection

And Resistance To Motion For Approval Of Voting Process was electronically filed with

the Clerk of the Bankruptcy Court using the CM/ECF system which sent notification of

such filing to all CM/ECF participants.

Jerrold L. Strasheim